is 24-21-1-0 U.S. v. Espinal. Thank you. Good morning, Your Honors. May it please the Court, Sarah Baumgartel of the Federal Defenders on behalf of Luis Espinal. Mr. Espinal should be resentenced because of a significant error with respect to- Speak right up. Sorry. Mr. Espinal should be resentenced due to a significant guidelines error. The Court erroneously held him liable for an attempted murder, finding that after a brief street altercation where Mr. Espinal shot, that he had the specific intent to murder the person he was shooting at. That finding is not supported by the record, and because of that significant guidelines error, Mr. Espinal should be resentenced. I've watched that video 15 times. I don't know how many times Judge Stein watched it. But the victim was closer than you and me. Yes. You know, the fact that someone's a bad shot is not an indication of their intent. Their intent might be one- You know, I might intend to shoot par, but I'll settle for the double bogey. The golf analogy's been working lately. So, I don't understand how Judge Stein's view of that tape somehow becomes wrong or somehow reversible. So, two points. First- It's clear error, right? It's got to be clear error. No. It should be de novo or- Well, why is that? Because isn't looking at a set of facts and deciding that the conclusion is intent as opposed to just firing while- I mean, he draws down and holds it. He holds it on him, and he shoots several times. Two. Yeah. Two. Okay. Okay. So, two points. Definitely de novo. One's enough to kill, right? Well, both- So, the ASN, we cite a lot of cases back and forth, and as you can see, there are many cases where there are shootings and courts are divided based on the specific circumstances of the shooting as to whether it constitutes an attempted murder. And I think that Judge Lynch's opinion in the United States v. Jackson is one of the most thorough and thoughtful and engaging with this issue. And what the case has recognized is that just because you shoot at someone doesn't actually mean that you're intending to kill them. And in particular, when we're applying this guideline, for example, if the shooting is a product of a sudden quarrel or in the heat of passion, which I don't even think the government can make any argument that that's not what this was, then effectively, that would at most be an attempted manslaughter under federal law, and you would be sentenced under the Aggravated Assault Guideline, which is what the defense advocated for here. And so- You know what's interesting about the video is if you watch it, there are four people with the defendant. The defendant and three others that walk over towards their car. There's a fellow in black, a fellow standing next to the defendant, and then a fellow in a white hoodie. And when they first come up to that car, the hoodie's down. Okay? And as the victim gets a little bit closer, a little bit closer, the fellow in the white hoodie backs up, puts his hoodie on, ties it down. It's preparation. You could see it. And then what he does is, and the defendant, your client, has got his hands at his waist, and there's obviously conversation going on of some nature, which seems to be interpreted by the fellow in the white hoodie that bad things are about to happen. What does he do? He walks around and he walks over to the side, to the edge of the street, and then when the shots get fired, the fellow in the black is already across the street drawing down and shooting. He's the other shooter, right? Yes, there is another shooter. These people are prepared for this confrontation. These are four people acting in coordination with regard to some kind of confrontation that they recognize quickly. And so I don't understand how this is just some kind of casual shot. This is a group of people, and then all four of them flee in the same direction, and they run up White Plains Boulevard, and they make the first left turn they can. And so it looks at least, you know, I'm from upstate New York. I'm not familiar with this kind of street crime, but this looks like these people know what they're doing. This looks like a security detail. Your Honor, Mr. Espinel was there with his friends, and I think you've correctly identified a couple of important points of the video, which undermine a claim that it was attempted murder, which is that Mr. Espinel stands there while some sort of interaction is happening. Because for some reason they identify this man as a threat that's coming towards him for whatever reason. Exactly. He perceives this person as a threat, and as Your Honor has identified, so does the other person with Mr. Espinel, because you can see from the way that they move that whatever this other person is doing, and we can't hear what he's saying, but whatever he's doing when he turns around, makes these wild gesticulations, and advances towards Mr. Espinel and his friends, all of them react as if it's threatening. And so that actually supports Mr. Espinel's claim that the only reason that he ultimately pulled out a gun and shot at this person is because he thought that he needed to in self-defense. Well, yeah, the only problem is that the fellow that's approaching him never reaches for anything. Well, Your Honor, and that's, so there are a couple of things, and I'm sure Your Honor probably knows the law better than I do on self-defense, because it is fundamentally a state law inquiry, but even if Mr. Espinel is wrong in his... Yeah, this is not Florida. This is, so you have to have, the response has to be reasonable with regard to the threat that's reasonably perceived. It has to be reasonable, and a couple of things. First off is obviously you consider his own subjective perceptions as well as his prior experiences in determining whether or not it's reasonable, and so there is in his sentencing submission documentation of his history of trauma and witnessing shootings, but in addition, there are many cases before this Court where police officers and others say, well, the individual's gesticulating towards his waistband, I think in Weaver, the en banc decision, this Court says that a person tugging... Which justifies their use of lethal force. Tugging, well, tugging on their waistband, putting their hands by their waistband created suspicion that an individual had a gun, and that is exactly what this person who advances on Mr. Espinel is doing. He's putting his hands by his waistband, he's gesticulating and moving in a way that made it appear that he had a gun. I do just want to reiterate that even if you don't credit, even if you don't think it's sufficient to show self-defense, as Judge Lynch discusses in Jackson, murder, attempted murder, is one of the most serious offenses in the penal code. It requires a specific intent to kill, and if it's anything less than that, if it's a shooting based on a sudden quarrel, in the heat of passion, trying to scare someone, or even just trying to injure someone, it doesn't amount to an attempted murder. And that's what this video shows. This video shows you... I appreciate that you've watched it so closely, but part of what happens when you do that is you forget that it's literally 90 seconds. Your argument is premised on the video, and then you're the one who included it in the record. No, no. You made it available to me to peruse, and so I took you up on your offer. No, I'm glad. I'm glad. I know you'd be a good lawyer. But what I'm trying to say is that, you know, for example, I'm sure your experience was similar to mine. It's the first time I watched it, I couldn't quite see what was happening, right? And so you watch it again and again and again. And that's the point, is Mr. Espinel was living this. And so this was the time between when he pulls and actually shoots is, I think, literally three seconds. The entire encounter spans 90 seconds, and so this was an unexpected, fast-moving situation where clearly the video is troubling, and clearly it evinces recklessness, and clearly he came up with a crime. Well, I'm suggesting to you that you're drawing a conclusion that I think other conclusions are available to be drawn that might not be unreasonable. And so that's why the first question I had to you is what's the standard of review? Thank you for bringing me back to that. And so it should be de novo, and I think that the simplest way to say this is that the Supreme Court and this Court in the United States v. Hawk has said that when the undisputed facts are captured in a video and the only question is what is the conclusion we draw from that video, this Court can view the video and make a de novo determination. The way you just phrased that, drawing a conclusion from the facts, it strikes me that in law there's two different kinds of conclusions that you might draw from the video. One is what we would call a factual inference, and one is a legal conclusion. And I've always thought of intent as being in the fact box, that we have the observation we make, and the question is whether you can infer as a finding of fact that he had intent to kill. Does that sort of take it out of the de novo box and put it into the deferential box? No. I understand Your Honor's point. And so the question is, is it primarily legal or primarily factual? And I'd analogize this to you. It's not a perfect analogy, but this is akin to a sufficiency argument. So the question is the totality of the evidence is this undisputed video. Is that legally sufficient to show that Mr. Espinol committed an attempted murder?  I mean, I suppose that you can accomplish the same thing by saying it's clear error review, and what we're looking at is to say, no, there's no universe in which a reasonable judge could infer specific intent from the video that we've seen. I mean, that would be a deferential. But if we thought that, yeah, you could infer that, but it's close, then that would be a deferential. And just to come back to Judge Walker's question, the distinction here, as we're discussing, is that essentially if it's a tie or if the evidence could go either way, if it's clear error, then we lose. Whereas if it's de novo, if it's a tie or the evidence could go either way, then that means the government hasn't proven this by a preponderance of the evidence. And in, for example, the sufficiency context, the court does review de novo. That feels like it conflates the standard of review with the burden of proof. And I think they're related because we might say that it would be clear error to say that those observations can support that conclusion beyond a reasonable doubt, but it might not be clear error to say that those observations support that finding to a preponderance. But aren't those really different questions? I think they're related just because if you're not sure what the video shows, then the government hasn't proven it by a preponderance of the evidence. If we don't think that a reasonable viewer of the video could conclude by a preponderance without speculating, then that's clear error. I would say if this court looking at the video is not convinced that this was an attempted murder, then that should be the end of it. And it is de novo review. So I'm curious. There's three of us. Do we all have to be convinced or does it just take one of us? My understanding of appellate court is I need two. Right. Fair enough. Good call. I guess what I'm trying to get at is there is this deceit. Pretend that we didn't have a video, right? And instead of a video, we had a bunch of testimony that nobody disputes and everybody describes what they saw, and the descriptions collectively paint the picture we saw in the video. And the district court then draws an inference that this was intended to kill, based on the distance and the timing and everything else. You wouldn't in that case say we're reviewing the conclusion, the finding, as to specific intent de novo. You would say we're reviewing it for clear error. And we still have to ask the question whether this testimony collectively could support the finding that the court made to the standard, whatever the standard is that it has to meet. But I don't understand why having a video rather than a compilation of observations that are reported changes our standard of review. Because if there's testimony, and this is what the court's case has recognized, the district court is better positioned than this court to evaluate the credibility of that testimony and the conclusions to draw from it. There are many situations in which a district court or trial court is better positioned to make judgments and what inferences to draw because there's live testimony, because there's some other factual materials they're able to consider. If there's a jury trial, there's a strong preference to defer to the jury's consideration of evidence. But in the limited unique situation where the only evidence is an undisputed video, as this court has recognized in other cases, there the members of this court are just as well positioned as the district court to decide what inference and conclusion to draw from that video. And so there's no reason to defer. I see my time has expired. Yeah, we'll hear from you again. So we'll hear from the government. May it please the court. Assistant United States Attorney Marguerite Colson. I represent the United States on appeal as I did below. Espinal's sentence was reasonable and based on thorough and well-supported fact finding by Judge Stein that is owed deference by this court. The findings and the inferences, as Judge Robinson pointed out, that Espinal challenges on appeal are factual. They are reviewed for clear error. But Judge Stein's findings are correct under either standard, de novo or clear error. The record establishes by a preponderance of the evidence that Espinal acted with intent to kill, that he did not act in self-defense, and that he was the shooter who inflicted the gunshot injury to victim two. So let me focus on that second point. I mean, and I think we've trod the ground about the standard of review and the facts. There's this legal issue, Malpiso, and I understand that it wasn't squarely raised below. But it seems pretty clear to me from our decision in that case that you don't get the benefit of that or the detriment of that enhancement if the person that you injure is not the person you were trying to injure. And so that seems like a pretty big deal. I guess I'm trying to help me out in terms of how to respond to that. A few points, Your Honor. Now, Malpiso was not raised below. And so if this Court is to consider it at all, and it has the discretion not to consider it, of course, because it was available and there are no factual determinations to be made. It was available to Mr. Espinal below. But if this Court is to consider it, it is to consider it for plain error. And now Espinal cannot make out plain error where Malpiso, the Second Circuit, was clear. It was not addressing the question of transferred intent. And so it cannot be clear or obvious error for Judge Stein to have applied that enhancement based on the application of transferred intent. But the doctrine that the Court relied on in Malpiso is only available. The guideline pursuant to which there was the departure is only available when there isn't otherwise a guideline that would take into account the conduct that you're after. So implicit in that decision, nobody, whether it was transferred intent, nobody argued transferred intent here, right? Like there was nothing about the case where anybody thought that the guideline applied squarely the way the district court applied it here. So whether you, in other words, the district court there recognized that the guideline didn't apply and then specifically adopted a doctrine of transferred intent to try to get at it. That didn't happen here. That's correct, Your Honor. And all the more reason that plain error would be appropriate. It was never addressed. Judge Stein never had this reason. I hear you on plain error, but we also have some law that when you squarely misapply the guidelines that that is plain error. And so I think I'm hearing you say it's not error at all, and I guess that's where I'm sort of struggling. I think my point is that it's not clear or obvious, which is the first prong of plain error, because the Second Circuit was explicit. We are not considering the question of transferred intent. And even if that were correct, Your Honor, even if the error were clear or obvious. But nobody's arguing transferred intent here. I mean, the court didn't, you didn't argue transferred intent below. I see your point, Your Honor. All the more reason it can't be plain or obvious because it is not clear what Judge Stein would have been applying that enhancement based on. And my point is if you move to the second, excuse me, the third and fourth prongs of plain error, Espinel cannot make out those prongs. There is no effect on his substantial rights when Malpezzo was clear there was an alternate avenue to reach that department. But usually, I mean, in Malpezzo, the district court applied that alternate avenue and reaffirmed. So we weren't inventing an alternative universe where the court adopted some different enhancement that it didn't actually ever consider and then imagined that it gave the notice and went through the process and decided to apply the enhancement. Here you're asking us in the context of plain error review to say, well, I know nobody has ever mentioned this alternate path, but it was available and the government could have asked for it, the court could have given the appropriate notice, they could have had the hearing, and I guess you're making the leap. Not only could the court have done the same, but the court would have done the same. Certainly, Your Honor, and I don't think it's much of a leap. As a matter of guidelines, even assuming that the application was inappropriate, the sentence would be 92 to 115, and 80 months is still well below that. But more... Well, we've been pretty clear that if you get the guidelines range wrong, then even if you have a below-guidelines sentence, that's an error that would typically require resentencing. I disagree with that, Your Honor. I think Melina Martinez is clear that when the record is silent or a judge has otherwise not been clear that his or her sentence is based on the 3553A factors, then Your Honor is correct that it would be a presumed resentencing. Here we have the opposite. We have a case just like Barnes where Judge Stein was expressed, my sentence is driven by the 3553A factors. And then he goes on to explicate them. He talks about incapacitation. He talks about individual and general deterrence. He talks about the conditions at MDC. He talks about Mr. Espinal's youth and his professed remorse. And then he says, to put a finer point on it, my sentence is the same regardless of whether I find intent to kill. And taking Your Honor back to the Malpezzo point, he also points out at A74 that Mr. Espinal's shooting created a significant risk to bystanders. He notes the man on the bicycle who, seven seconds prior, is directly in Mr. Espinal's line of fire, and he notes the elderly woman on the lower right who flees for cover. Those are the bystanders who are put at significant risk and would have been the obvious basis for that upward departure. So it is not a leap, we don't think. We think it is quite squarely supported by the record. Well, you wouldn't even need to get to the bystanders. I mean, you'd get to the individual who got hit and wasn't the target of the shot. Precisely, Your Honor. Because it's not an upward enhancement for endangering bystanders. It's an upward enhancement for injuring somebody. Certainly, Your Honor, but I think the sort of further finding of the bystander risk would support that departure. So on the specific intent, one of the things I struggle with is we have this notion that when we're watching a video, we're seeing reality as it exists, sort of without regard to other angles that might change our perception. And we don't know what was being said, but would it change the scenario if we had audio and the victim one was saying, I've got a gun and I'm going to shoot you now? If Your Honor is asking whether self-defense would be a viable avenue in that instance, I still think the law would not favor him. Mr. Espinel ignores other aspects of self-defense, which requires before somebody used lethal force, that he not initiate the conflict and that he not avail himself of an obvious available ability to retreat. So what if we had audio and the defendant was saying, you get out of here or I'm going to hit you with the next one, right? Signifying that he's not trying to shoot him. He's trying to shoot near him to scare him. Would that change the analysis? Your Honor, I think that hypothetical might change the analysis, but the point is we don't have that. And so we are inclined to defer to Judge Stein, who is closer to these facts as the sentencing judge, the same way that if a jury were to have watched the video. Right. I think what we still have to decide, even on clear error review, is we don't say that an inference that's based on speculation, right, is okay, right? It only survives clear error if we conclude that a judge could reach that conclusion based on, you know, there might be a range of permissible interpretations of the video, but you've got to get into that range to survive plain error or clear error, sorry, clear error review. And I'm just testing, I guess, whether we're giving too much power, both to the district judge and to us, to the video when it only encompasses one angle. If we had an angle that was straight on, that showed us that the shooter's arm was clearly not pointing towards the victim, but was pointing to the side, that might make it much harder to say, oh, we infer an intent to kill based on the close range. We don't really have an angle that lets us discern one way or the other, and so I'm trying to figure out whether it's speculation or reasonable interpretation of the observations reflected in the video to say there was an intent to kill, and we just don't, we can't tell. Well, I think what you have is victim two standing directly behind victim one, and is lined up, sort of, if you look at the video, all in sequence, and so I think it is fairly obvious that he is aiming at victim one. Victim one ducks, turns, and starts to run, and Espinel's bullet hits victim two. And so the other cases you're describing where there isn't, sort of, audio, where there is audio or there isn't, sort of, a clear sense of the path of the bullet is not this case. I think it is quite clear from the video. Well, it's interesting because, of course, there's this other issue about the other shooter, and it's, on first view, it's pretty easy to say, oh, yeah, that that's a reasonable inference that the bullet that defendant fired is the one that hit. How about on 25th? Excuse me? How about on 25th? You said on first view. Right, on 25th view, right. But one of the reasons that I think you get to that conclusion is that the other shooter, over and over again, I kept trying to see when the other shooter actually shot, and I think whatever happened happened behind a pole. So now we're making inferences based on the fact that we can't actually see the other shooter, and we're making inferences that the pole was blocking the way, but the pole wasn't blocking the space between the second shooter and the victim. The pole was blocking our view of the second shooter. And so, again, I'm sort of struggling with that. I believe Judge Stein thought that the pillar might have actually blocked the shot between shooter two and victim two, providing yet another reason that it's. And how could that, I guess, where did Judge Stein, I'm trying to figure out whether that's an inference that the video supports, because we don't actually see when the shot was fired. What you do see, Your Honor, is that shooter two is all but perpendicular to where victim one and victim two are lined up. And so sort of under any reasonable view of that video, he could not have inflicted. Well, he's perpendicular to victim one. I'll grant you that, because I think victim one is in sort of the line of the video. He's actually not perpendicular to victim two, who from his perspective would be off to the side of that. Directly behind victim one. And so if you look at. . . Well, not directly behind victim one from the perspective of where that second shooter is. I see what Your Honor is saying. It's a triangle. I see what Your Honor is saying. I think, but what's clear is that it's Espinal's shot that is directly facing, excuse me, directly pointed at victim one. What's clear is that Espinal's shot is squarely pointing to victim one. What's not clear is we know that the second shooter fired, and we have no idea what the angle of shot was. So we're drawing an inference that it was the first shooter based in part on a void in the video evidence as to the second shooter. That's something I'm thinking about. Two responses, Your Honor. I think the placement of victim two's arm, which is directly out in front of him, lends support to Judge Stein's finding that it would not have inflicted the gunshot that hit victim two. And more to the point, I think we are sort of circling around what is a quintessentially factual question. Who inflicted the shot? And so it seems to me that to suggest that this factual finding is not subject to clear error review is incorrect. This is a pure factual question. Who did this? Who did that? How close was the distance? Where was the gun pointed? These are factual findings that take this out of the realm of direct evidence. I'm with you on clear error review, but that doesn't mean no review. Understood, Your Honor. And so I do think that I take Your Honor's point that there could be videos that make it much more difficult. I don't think this is one of them, given the placement of shooter two's arm and the way that victim one, victim two, and Espinal were all lined up sort of perfectly in line, victim one ducks, leaving victim two the obvious sort of recipient, so to speak, of this gunshot. If the panel has no further questions, we would ask the court to affirm the sentence. Appreciate it. Thank you. Attorney Baumgartner. Is there a second amendment issue for us here? Your Honor, I did, but I wasn't intending to argue it because there are so many other cases. I understand that. My question is, do we have to wait for that line of cases to be decided before we decide this case, as we ordinarily do? Go ahead. I mean, I could also give the government an opportunity to address it. I mean, I think the government's position is we have raised an as-applied challenge. I think the government said that we are not entitled, essentially, to raise an as-applied challenge. Probably before deciding it, the court would want to seek guidance because I know that there are other 922G cases pending. Just a few. But they have to be decided eventually, Your Honor. It will happen. We may not live to see it. Mr. Espinel's scheduled release date is somewhat out in the future, and so there's no particular urgency to the case. Just with respect to, just to pick up on this last call of weight, my friend said that the lack of evidence was all the more reason to defer to Judge Stein's finding. I think the lack of evidence is a reason to find that this was not proof of an attempted murder. I think the discussions that you've heard about the videos and the different ways that it can be interpreted only underscore the lack of evidence supporting what is a really severe charge that Mr. Espinel acted with the specific intent to kill this other person as opposed to as a result of a sudden quarrel in the heat of passion or for many of the other reasons that cases highlight where there may be a shooting, but it doesn't rise to the level of this very severe crime. So take the video out of it. You've got a bunch of witnesses, and they come in and they say, yeah, they were arguing, and they were about eight feet apart, and victim one didn't make any sudden movements. The shooter defendant pulled up, sort of took a step laterally, pointed in his direction, and fired not once but a second time even as victim one was sort of trying, kind of stumbled and was trying to get away. Wouldn't that be enough to support an inference of intent to kill? If it's a sudden argument, for example, I might still argue that it's not sufficient for attempted murder under the guidelines because even attempted manslaughter, for example, is sentenced under the aggravated assault guideline. And so obviously there are many different circumstances that can occur in a case, but if you look at the cases where there's a finding of attempted murder, there is usually something more than what you have here that shows that it was more than a sudden quarrel. So there's some sort of lying in wait or purposeful targeting of a particular victim or explicit statements like a threat to kill or an expression of intent to kill, something that can take you to that next level to show that it was a true attempted murder, and there's nothing like that in this case. Thank you. Thank you both. Well argued. We will take it under advisement, and we appreciate it.